Filed 6/27/23  Port Blue v. Perlstein CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| PORT BLUE LLC, | B313030 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LC106964) |
| v. | |
| DANIEL S. PERLSTEIN et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Huey P. Cotton, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Yourist Law Corporation and Daniel J. Yourist for Defendants and Appellants.

Michael N. Sofris for Plaintiff and Respondent.

_____

In the proceedings below, the trial court entered a judgment finding that the amount owed to appellants Ronald and Judith Perlstein on a 1994 promissory note was $130,833.10, and that appellants were not entitled to attorneys' fees. Appellants contend: (1) the court's finding that $130,833.10 was owed is unsupported by the record; (2) the court erred by refusing to include late fees or use a higher interest rate in calculating the amount owed; and (3) the court erred in finding appellants were not entitled to attorneys' fees.

We conclude that the court's finding on the amount owed is not supported by substantial evidence, but that the remainder of appellants' arguments lack merit. We therefore reverse the portion of the judgment regarding the amount owed and remand with directions for the court to redetermine that amount. We affirm the remainder of the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Port Blue Files a Complaint*

In March 2018, respondent Port Blue LLC, as trustee for the Atlantic Trust, filed a complaint for fraud in the inducement and rescission against Ronald and Judith (as individuals and as trustees of the Perlstein Trust of 1982), their son Daniel Perlstein, and Western Fidelity Trustees.[1] In April 2018, Port Blue filed a Verified First Amended Complaint, adding causes of action for accounting and declaratory and injunctive relief. In

---

[1] Because the Perlsteins share a surname, we refer to them by their first name. Daniel and Western Fidelity are not parties to the appeal.

July 2018, the defendants demurred. In September 2018, the court granted the demurrer, with leave to amend.

In October 2018, Port Blue filed a Verified Second Amended Complaint (SAC). The SAC discussed two pieces of real property located at 11199 S. Atlantic Avenue and 12224 S. Atlantic Avenue in the city of Lynwood (the Atlantic Properties). It alleged that in 1994, a Deed of Trust was recorded against 12224 S. Atlantic Avenue in favor of Ronald and Judith as Co-Trustees of the Perlstein Trust of 1982 (the 1994 DOT), and that in 2007, a Deed of Trust was recorded against both Atlantic Properties in favor of Daniel (the 2007 DOT). The 2007 DOT was also recorded against a piece of real property located at 18350 Honey Lane in Lake Elsinore. The 1994 DOT secured a $225,000 loan made by appellants, which was evidenced by a promissory note (the 1994 Note), and the 2007 DOT secured a $387,000 loan made by Daniel, which was also evidenced by a promissory note (the 2007 Note). Francisco Soria was the borrower on both notes and the trustor on both Deeds of Trust.

The 1994 Note provided a 10-year term for repayment, with interest accruing at 7 percent for the first two years, 9 percent for the next three years, and 11 percent for the remaining five years. All amounts due and owing on the 1994 Note were to be repaid in a balloon payment due in March 2004. The 1994 Note also provided that "[i]n the event any payment is not paid within 10 days of the due date, Trustor shall pay to Beneficiary a late charge of Ten (10%) [*sic*] in addition to each payment due and unpaid" and that "[i]f action be instituted on this note I promise to pay such sum as the Court may fix attorney's fees. [*sic*]" The note contained no provisions addressing what would happen if the balloon payment was not made.

3

The SAC further alleged that, in December 2017, Western Fidelity posted a Notice of Trustee's Sale regarding the Atlantic Properties, and a Notice of Trustee's Sale regarding 18350 Honey Lane. Both Notices of Trustee's Sale claimed Soria was in default under the 2007 DOT. Daniel purchased 18350 Honey Lane and Port Blue purchased the Atlantic Properties.

Port Blue alleged that after it purchased the Atlantic Properties, appellants made a demand for payment of the " 'arrearages' " under the 1994 Note and followed up the demand with a Notice of Default and Election to Sell under the 1994 DOT. Port Blue claimed that it had no knowledge of the 1994 Note or 1994 DOT before buying the Atlantic Properties. Port Blue accused the defendants of a "conspiracy" to obtain an amount of money that "would be materially greater than both the fair market value of the Property and the actual indebtedness of Francisco [Soria] under the 1994 Note and 2007 Note . . . ."

Port Blue also alleged that, after its purchase, it discovered there were underground storage tanks beneath the Atlantic Properties, previously used to store gasoline. The tanks would need to be removed and the properties remediated before development thereon would be permitted, but the cost for the removal and remediation would likely exceed the amount Port Blue paid for the properties. Port Blue further alleged that the defendants knew or should have known about the underground storage tanks.

Port Blue therefore alleged causes of action for: (1) rescission of the sale of the Atlantic Properties to Port Blue; (2) fraud in the inducement based on the defendants' non-disclosure of the 1994 Note and the underground storage tanks, as well as the defendants' "conspiracy"; (3) money had and received on the

4

theory that the defendants had received "benefits" consisting of the proceeds from the purchase of the Atlantic Properties, the purchase of 18350 Honey Lane, and payments made by Soria on both the 2007 Note and the 1994 Note, and that Port Blue was entitled to $400,000 of the amount appellants received, and that the value of what appellants received "must be credited to Defendants' account for purposes of calculating any sum due pursuant to the 1994 Note"; (4) an accounting setting forth the amounts actually due under the 1994 Note and the 2007 Note; and (5) declaratory relief that it purchased the Atlantic Properties free and clear of the 1994 DOT.

### B.    *The Court Orders an Accounting*

In December 2018, defendants demurred to all but the accounting cause of action, arguing that Port Blue assumed the risks associated with buying property at a foreclosure sale and that Port Blue had constructive notice of the 1994 DOT. Defendants also argued that Port Blue's fraud cause of action lacked the requisite specificity regarding misrepresentations and justifiable reliance.  Port Blue opposed the demurrer and defendants replied.  In January 2019, the court sustained the demurrer without leave to amend, and in February 2019, defendants filed a verified answer to the SAC.

In April 2019, Port Blue filed a motion for an accounting and a reference, asking the court to find an accounting was necessary and to appoint an experienced forensic accountant under Code of Civil Procedure section 639 to determine the

5

amounts due on the 1994 Note and 2007 Note.[2]  Defendants opposed, arguing the case was insufficiently complex to require the appointment of an accountant, and that they should not be required to pay for an accountant.  In June 2019, the court appointed Samuel Biggs as an Accounting Referee.

## C. *The Accountant Files His Initial Report*

In December 2019, Biggs filed a "Report on Review of Note, Payments, Charges and Related Records."  He opined that the 2007 DOT was "a totally separate, distinct and unrelated transaction from" the 1994 DOT, and thus he "did not review" the loan transactions relating to the 2007 DOT.  As to the 1994 Note, he found that it was "in the amount of $225,000 for a period of ten (10) years and [was] due on March 9, 2004, with a balloon payment of $211,591.60."  Interest was to be in the amount of 7 percent for the first two years, 9 percent for the next three years, and 11 percent for the remaining five years.  The 1994 Note also provided that if Soria failed to make a payment more than ten days after that payment's due date, he would "pay to the Beneficiary a late charge of Ten (10%) [*sic*] in addition to each payment due and unpaid."  Soria also agreed to pay attorneys' fees should an action be "instituted on this note."  The 1994 Note had no provisions for default interest, referenced no payment

---

[2] (Code Civ. Proc., § 639, subd. (a) ["When the parties do not consent, the court may, upon the written motion of any party, . . . appoint a referee in the following cases . . . : [¶] (1) When the trial of an issue of fact requires the examination of a long account on either side . . . . [¶] (2) When the taking of an account is necessary for the information of the court before judgment, or for carrying a judgment or order into effect"].)

amortization schedule, and contained no provisions for continuation of the terms of the note after maturity. Biggs noted that after April 5, 2013, interest appeared to be calculated at an 8 percent rate.

Despite missing repayment information from the inception of the 1994 Note until January 2006, Biggs devised a method to calculate the amount due on February 1, 2018 (eight days after Port Blue purchased the Atlantic Properties) and determined that $163,443.40 was due as of that date, consisting of $161,875.78 in principal and $1,567.62 in interest. Biggs also calculated the interest accrued from February 1, 2018, through October 31, 2019, using two alternate rates of interest: $22,600.51 at a rate of 8 percent and $31,057.72 at a rate of 11 percent. Biggs found "no substantive basis for calculating late fees" because the "late fees charged by the Note Holder were sporadic, inconsistent in amounts and never at 10% of any payment made." He also noted that in his calculations, "Legal and Other Costs were accumulated but not added to the unpaid Note principal balance."

### D.  *Biggs Files a Supplemental Report*

In January 2020, defendants filed an objection to some of the conclusions in Biggs's report, arguing that: (1) the 8 percent interest rate Biggs used was barred by the statute of frauds because that rate was "orally offered to" Soria "as a courtesy when Soria fell behind in making his loan payments"; (2) late fees should have been applied; and (3) attorneys' fees should have been included in the amount owed, subject to the court's final decision as to their amount.

Two weeks later, Port Blue filed a motion asking the court to order Biggs to calculate the amount of offset to which Port

Blue would be entitled if the court were to determine that the amount owed under the 1994 Note should be reduced by either the surplus from the Atlantic Properties foreclosure sale or the difference between the amount for which Daniel purchased the Honey Lane property and the amount he sold it for two months later.

In March 2020, the court instructed Biggs to calculate the "surplus that resulted when the 2007 lien was paid in full," emphasizing that it was not deciding at this point whether the surplus would be used as an offset. The court also ruled that amounts owed after April 2013 accrued interest at a rate of 8 percent. The court overruled all other objections from both parties and noted that "Biggs was not tasked with determining legal issues. Thus, issues of whether attorney's fees will be available, or whether an offset should be made[,] were not within the scope of the report."

In January 2021, Biggs submitted a supplemental report, stating that of the $595,100 paid for the Atlantic Properties, $464,266.90 was paid to Daniel, $4,387.27 was paid to Western Fidelity for fees and costs, $8,724.64 was paid to Los Angeles County for property taxes, $7,631.00 was paid to Edgar Allen Kemp to satisfy a judgment lien, and the remaining $110,090.19 was returned to Soria. In response, Port Blue sent a letter to Biggs, asking him to confirm that the "surplus" he was asked to calculate was $130,833.10 (i.e., $595,100 (amount paid for the Atlantic Properties) minus $464,266.90 (amount paid to Daniel)). This letter was included in a March 2021 filing with the court.

In April 2021, Port Blue filed a "Memorandum re Equitable Set Off of Surplus." In this memorandum, Port Blue claimed that "the amount received by Defendants from the sale of the Atlantic

8

and Elsinore Properties was $130,833.10 greater than the amount of the 2007 Note and 2007 DOT."

On April 26, 2021, the court held a hearing on whether any surplus funds would be credited against the amount owed on the 1994 Note. It ruled that Port Blue was "not entitled to surplus funds," and also that there would be "no award of attorneys fees." When Port Blue asked whether the court had calculated what amount was due under the 1994 Note, the court responded: "I have not. I'm glad you offered your calculation. What was it[, $]130,000? Let me see. The amount was consistent with [Biggs's] . . . calculation, let's see. I had it circled and now I can't find it. $130,833.10." When asked why attorneys' fees would not be awarded, the court responded, "It's discretionary and I'm not awarding it." Defendants were ordered to prepare a proposed judgment.

### E.    *The Court Enters an Erroneous Judgment*

On May 4, 2021, Port Blue objected to defendants' proposed judgment and asked the court to enter its proposed judgment instead.[3] One objection raised by Port Blue concerned the amount owing on the 1994 Note; Port Blue claimed the court had determined this amount to be $130,833.10. Port Blue's proposed judgment reflected the $130,833.10 amount.

On May 5, 2021, defendants responded to Port Blue's objection, stating that Port Blue was claiming that "<u>the amount of the surplus, $130,833.10,</u> that Plaintiff tried, but failed to have the Court order a credit against what Plaintiff owes on the [the

---

[3] Defendants' proposed judgment does not appear to be in the appellate record.

1994 DOT], <u>is all that is currently owed on</u>" the 1994 DOT, which claim "makes no sense whatsoever."

On May 7, 2021, the court signed Port Blue's proposed judgment.  Ten days later, defendants filed an ex parte application to amend the judgment to conform with the accounting reports.  They argued the judgment contained a clerical error because it "mistakenly referenced the wrong accounting referee report."  The court denied the application, finding it lacked jurisdiction to consider it.  Defendants timely appealed.[4]

## DISCUSSION

### A.  *Substantial Evidence Does Not Support the Judgment*

Appellants contend that the court erred in finding $130,833.10 was the amount owed under the 1994 Note.  "When the trial court has resolved a disputed factual issue, the appellate courts review the ruling according to the substantial evidence rule.  If the trial court's resolution of the factual issue is supported by substantial evidence, it must be affirmed." (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632.)  However, "[r]eversal is proper when there is a complete lack of evidentiary support for a finding essential to the judgment."  (*Claussen v. First Am. Title Guar. Co.* (1986) 186 Cal.App.3d 429, 437.)  Such is the case here.

According to Biggs, as of February 1, 2018, $163,443.40 was owed on the 1994 Note, consisting of $161,875.78 in principal

---

[4] Port Blue also timely filed a Notice of Cross-Appeal but, at Port Blue's request, we dismissed it in November 2022.

and $1,567.62 in interest.  The court found that, thereafter, interest accrued at 8 percent per year.  However, when the court entered judgment, it stated that "the amount due to Defendants" on the 1994 Note "is determined to be $130,833.10."  There is no evidentiary basis for this determination.

The court's error appears to originate from the April 2021 hearing on surplus funds.  At that hearing, after the court ruled that Port Blue was not entitled to offset the amount owed on the 1994 Note with surplus funds from the Atlantic Properties sale, Port Blue asked the court whether it had calculated the amount due under the 1994 Note.  The court stated it had not done so, but was glad Port Blue had offered its "calculation" and then ruminated, "What was it[, $]130,000?  Let me see.  The amount was consistent with [Biggs's] . . . calculation, let's see.  I had it circled and now I can't find it.  $130,833.10."

While the court did not clarify what Port Blue calculation it was referencing, in a memorandum filed in advance of the April 2021 hearing, Port Blue had stated that "the amount received by Defendants from the sale of the Atlantic and Elsinore Properties was $130,833.10 greater than the amount of the 2007 Note and 2007 DOT."  Similarly, in a letter Port Blue had written to Biggs—included as an attachment to a March 2021 memorandum Port Blue filed—Port Blue had asked him to confirm that the "surplus" he was asked to calculate was $130,833.10 ($595,100 (amount paid for the Atlantic Properties) minus $464,266.90 (amount paid to Daniel)).  Thus, as Port Blue acknowledged, $130,833.10 was the "Surplus," not the amount due under the 1994 Note.  Contrary to the court's statement, $130,833.10 was not "consistent with [Biggs's] calculation"—Biggs calculated that $163,443.40 was owed on the 1994 Note as of February 1, 2018.

11

On appeal, Port Blue admits that Biggs calculated $163,443.40 was owed on the 1994 Note as of February 1, 2018. Nevertheless, it urges us to reject appellants' argument because: (1) appellants allegedly failed to raise this issue below; (2) appellants allegedly failed to provide an adequate record on appeal; and (3) the court found that the amount Biggs found owing under the 1994 Note should be reduced by some portion of the "surplus funds," and the record supports the court's determination of that reduction. None of Port Blue's contentions is well-taken.

### 1. Appellants Did Not Forfeit Their Argument

Port Blue argues that, because appellants "never sought proper procedural reconsideration of the trial court's judgment," they have forfeited their arguments on appeal because they "failed to give the trial court an opportunity to review the claimed 'error'."

We need not consider whether appellants' ex parte application constituted seeking "proper procedural reconsideration" or whether appellants were required even to seek such reconsideration. It is undisputed that two days before the judgment was signed, appellants explained to the court that Port Blue was claiming that "the amount of the surplus, $130,833.10, that Plaintiff tried, but failed to have the Court order a credit against what Plaintiff owes on the [1994 Note], is all that is currently owed on" the 1994 Note, which claim "makes no sense whatsoever." (Underlining in original.) This objection sufficiently preserved the issue for appellate review.

12

### 2. There Is an Adequate Record on Appeal

Port Blue argues that appellants do not "reference . . . any Reporter's Transcripts of proceedings in which the trial court made rulings that are at issue in the appeal." Port Blue does not specify which reporter's transcripts are allegedly missing, and we discern none. The reporter's transcript for the April 2021 hearing in which the court made its erroneous determination of $130,833.10 is included in the record. Nothing in the record indicates the court held a hearing to discuss appellants' objections to Port Blue's proposed judgment prior to signing it.

### 3. The Court Did Not Find the Amount Owed Should Be Reduced by Any of the Surplus Funds

Port Blue contends that "[w]hile it is true the trial court denied Plaintiff's request for an offset of all of the surplus amounts, <u>the trial court did find that the surplus funds were used to reduce the actual amounts due and owing under the DOT as found in the Supplemental Report filed by Mr. Biggs.</u>" (Emphasis in original.) As near as we can decipher, Port Blue is claiming that while the court denied its request to offset the entire "surplus" from the amount owed to appellants, the court agreed that the amount owed should be reduced by some portion of the surplus, and the amount owing after that reduction was $130,833.10. We reject this argument for two reasons.

First, such an argument requires us to believe that the amount to which the court reduced the balance owing on the 1994 Note—which reduction the court effectuated without ever stating that it was doing so—just happens to be identical to the amount Port Blue called the "Surplus" (i.e., the difference between the

13

amount it paid for the Atlantic Properties and the amount paid to Daniel on the 2007 Note). Such a coincidence strains credulity.

Second, Port Blue cites nothing in the record to support its incredible claim, and our independent review of the record reveals nothing either. In fact, the record supports only the opposite conclusion: when the court stated that Port Blue was "not entitled to **any** surplus funds," its meaning could only have been that the amount owed by Port Blue was *not* to be offset by any of the surplus funds. (Emphasis added.)

Substantial evidence does not support the court's finding regarding the amount owed on the 1994 Note, and thus that portion of the judgment must be reversed.

### B.    *The Statute of Frauds Is Inapplicable*

Appellants admit that, at some point, as a courtesy to Soria, Ronald orally agreed to an 8 percent annual interest rate for the 1994 Note. In the proceedings below, the court determined that, after April 2013, interest on the 1994 Note should accrue at 8 percent per year. The court also refused to order Port Blue to pay any late fees. Appellants contend the court erred in both decisions because both enforcing Ronald's previous oral acquiescence to an 8 percent interest rate, and not requiring Port Blue to pay late fees despite the language of the 1994 Note providing for such fees, amounted to permitting an oral modification of the written 1994 Note, violating the statute of frauds. We reject the premise of appellants' argument.

The 1994 Note provided for a ten-year repayment period, with three different interest rates: 7 percent for the first two years, 9 percent for the next three years, and 11 percent for the remaining five years. At the end of ten years, Soria was to repay all amounts due and owing. The note also provided that if "any

14

payment is not paid within 10 days of the due date, Trustor [Soria] shall pay to Beneficiary a late charge of Ten (10%) [*sic*] in addition to each payment due and unpaid."

The 1994 Note contained no provisions on what interest rate would apply should Soria fail to make the final balloon payment. Therefore, Ronald and Soria's agreement to an 8 percent interest rate, which took place after the ten-year term of the 1994 Note, did not require modifying the terms of the note.

Similarly, while the late payment provision referred to "any payment," because the 1994 Note only contemplated payments from April 1994 through March 2004, we conclude that "any payment" refers to payments made within that time period, not thereafter. Therefore, the court's refusal to require the payment of late fees after the ten-year period of the 1994 Note also did not require modification of the note. The statute of frauds is inapplicable.

## C. *The Court Did Not Err in Refusing to Award Attorneys' Fees*

At the April 2021 hearing on surplus funds, the court informed the parties that there would be "no award of attorney's fees." Appellants contend the court erred in refusing to award them fees. We disagree.[5]

---

[5] Preliminarily, we note that the appellate record reflects no express motion or request for attorneys' fees, and neither party cites anything in the record to show such a request was made. However, in their verified answer to the SAC, both appellants requested "costs" and "such other and further relief as the Court deems just and proper." "Costs" can include attorneys' fees when permitted by contract. (Code Civ. Proc., § 1033.5,
*(Fn. is continued on the next page.)*

"In any action *on a contract*, where the contract specifically provides that attorney's fees and costs, which are incurred *to enforce that contract*, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (Civ. Code, § 1717, subd. (a), emphasis added.) " ' "[T]he determination of the legal basis for an attorney fee award is subject to independent review." ' " (*Soni v. Cartograph, Inc.* (2023) 90 Cal.App.5th 1, 7–8, quoting *Wohlgemuth v. Caterpillar Inc.* (2012) 207 Cal.App.4th 1252, 1258.) We find there is no legal basis for an attorneys' fees award.

Citing *Hsu v. Abbara* (1995) 9 Cal.4th 863, 876 appellants argue that " 'when a defendant defeats recovery by the plaintiff on the only contract claim in the action, the defendant is the party prevailing on the contract under [Civil Code] section 1717 as a matter of law,' " and that appellants were entitled to fees because they "successfully defended against all attacks Port Blue made to the validity of the 1994 Note and the related Deed of Trust."

Civil Code section 1717 is inapplicable here because none of Port Blue's causes of action was "on a contract" providing for fees.

---

subd. (10)(A).) Additionally, in objecting to Biggs's initial report, appellants requested that their legal fees be added to the amount owed on the 1994 Note. As Port Blue has not argued that we should affirm the court's denial of fees due to the lack of an express request for fees from appellants, we will assume that all parties agree that fees were properly requested, and determine whether the court erred in denying them.

16

In their reply brief, appellants claim they prevailed on three "contract-based" causes of action:  (1) rescission, (2) money had and received, and (3) declaratory relief.  But while these actions may be "contract-based" in certain circumstances, here, they were not based on the contract containing an attorneys' fees provision (i.e., the 1994 Note).

Where a party seeks rescission of a contract based on fraud, "courts have concluded such claim does sound in contract and permits the award of fees."  (*Super 7 Motel Associates v. Wang* (1993) 16 Cal.App.4th 541, 549.)  However, Port Blue sought to rescind not the 1994 Note, but Port Blue's agreement to purchase the Atlantic Properties.  As such, its rescission cause of action was not an action "on" the 1994 Note.

Similarly, Port Blue's cause of action for money had and received alleged that appellants had received "benefits" consisting of the proceeds from the purchase of the Atlantic Properties, the purchase of 18350 Honey Lane, and payments made by Soria on both the 2007 Note and the 1994 Note, and that Port Blue was entitled to at least $400,000 of the amount appellants received.  Port Blue also alleged that the value of what appellants received "must be credited to Defendants' account for purposes of calculating any sum due pursuant to the 1994 Note." But while the 1994 Note was mentioned in this cause of action, Port Blue sought neither to enforce nor to invalidate the note, merely to ensure that amounts Port Blue contended appellants received were credited to any amount claimed to be owing on the note.  This does not constitute a cause of action "on" the note. (Cf. *Brown v. West Covina Toyota* (1994) 26 Cal.App.4th 555, 565 [action " 'grounded not upon the contract, but upon the duty springing from the relation created by it' " not action "on a

17

contract"], disapproved on other grounds in *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 996.)[6]

Finally, Port Blue's declaratory relief cause of action sought a declaration that Port Blue held title to the Atlantic Properties free and clear of any claim appellants could assert. While appellants correctly note that this cause of action sought a declaration that "the 1994 Note was and is equitably subordinated to the P[ort] B[lue] Deed," we do not interpret this request literally, as it would make no sense. It was not the 1994 Note that gave appellants the right to foreclose on 12224 S. Atlantic Avenue, but the 1994 DOT.[7] (See *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1235 [deed of trust " 'entitles the lender to reach some asset of the debtor if the note is not paid' "].) Port Blue's request to have the 1994 Note subordinated to its own deed can only be understood as a request that the court find the 1994 DOT subordinated. As such, while the declaratory

---

[6] Appellants cite *Weitzenkorn v. Lesser* (1953) 40 Cal.2d 778, 794 for the proposition that a common count for money had and received is based in contract. *Weitzenkorn* discussed the nature of a "common count of *quantum valebant* for the reasonable value of goods sold and delivered," and stated that "[u]nder the code system of pleading, as at common law, the common counts are sufficient to state a cause of action upon either a contract implied in fact [citation] or a contract implied in law." (*Id.* at pp. 792, 793.) But even if Port Blue were alleging a contract implied in fact in its cause of action for money had and received, appellants' alleged breach of that implied contract would not be an action on the 1994 Note.

[7] As appellants admit, the 1994 Note was not even recorded.

relief cause of action undoubtedly related to the 1994 Note, it was not an action "on" that contract.

Therefore, while appellants indisputably prevailed on all three causes of action discussed above, none of these actions was contract-based causes of action as contemplated by Civil Code section 1717.  As such, appellants were not entitled to attorneys' fees for their victory, and the court did not err in declining to award them.[8]

## DISPOSITION

The portion of the court's judgment determining the amount owed on the 1994 Note is reversed.  On remand, the court is to enter a new judgment determining the amount due on the 1994 Note, using as a basis the accountant's determination that $163,443.40 was due as of February 1, 2018, and taking into account any additional interest owed at 8 percent and any payments that may have been made after the original judgment was entered.  The remainder of the original judgment is affirmed.

---

[8] When asked why it was not awarding fees, the court stated only that the award was "discretionary" and it was disinclined to award fees.  The judgment entered by the court stated that it found there was "no prevailing party and therefore declines to award fees and costs."  But "[a] fundamental principle of appellate review is that a judgment correct in law will not be reversed merely because given for the wrong reason; we review the trial court's judgment, not its reasoning."  (*Mayer v. C.W. Driver* (2002) 98 Cal.App.4th 48, 64.)  Thus, we need not consider the court's reasoning for declining to award attorneys' fees.

In the interests of justice, each party shall bear their own costs on appeal.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.